The next case called is People v. Bethany Austin, Case No. 123910, Agenda No. 4. Mr. Fisher, if you're ready, you may proceed. Good morning, Your Honor. I'm Mark Fleck. I please the Court, Assistant Attorney General Carson Fisher, for the People. Your Honor, this Court should uphold the crime of nonsensical dissemination of private sexual images for one of two reasons. Either because it only prohibits speech that is unprotected by the First Amendment, or because the statute is narrowly tailored to compelling government interests. Your Honor, the First Amendment tolerates restrictions on publication of private information that is not of legitimate public concern. The United States Supreme Court has always taken care to make clear that it is not holding that states are prohibited from prescribing such speech. Indeed, multiple federal circuit courts have recognized publication of such truly private information as an unprotected category of speech. As have lower courts in this state. This prescription is part of a long history in American law of protecting the right to privacy against the publication of truthful private information. That oft-cited law review article 130 years ago by Brandeis and Warren talked about the long history in American law of protecting the right to privacy, the right to be let alone. And it recognized the distinction between private information that was not of legitimate public concern and private information that is of legitimate public concern. One example they used was publicizing the fact that someone had a speech impediment. If the person in question was, say, running for Congress, they said, well, then the First Amendment would protect the right to publish that information. But they said that if the person in question was a private citizen, then the state would be able to prescribe the publication of that private information. They also recognized that changing technology, changing business practices, changing society would necessitate the creation of additional causes of action of future prescriptions on this kind of speech in order to protect the right to privacy. And indeed, in the century plus since they wrote that article, numerous additional causes of action have come into being that do prescribe the publication of truly private information. This prescription is part of that longstanding historical tradition. A defendant is correct that the state, as the Supreme Court has put it, does not have free-willing authority to announce new categories of unprotected speech. But that's not what the state's asking this court to do. The Supreme Court has also recognized that there may well be additional categories of unprotected speech that it hasn't had cause to explicitly recognize yet. And that in order to find those categories, it would need to be shown that the novel prescription in front of it, in this case a prohibition on the dissemination of private sexual images, was part of such a longstanding tradition. Here, we have hundreds of years of causes of action, many of which, such as the public disclosure court that we discussed in our brief, have elements that overlap this crime. This prescription is just a continuation of such a tradition in American law of allowing the First Amendment-tolerating prescription of this kind of speech. And so therefore, this court should hold that the statute is constitutional because it only prescribes speech that is unprotected by the First Amendment. The court declines to recognize the speech prescribed by the statute as unprotected by the First Amendment. These same considerations are viewed strongly in favor of holding that the statute is narrowly tailored to compelling government interests. As discussed, the statute is narrowly tailored in that it only prescribes the dissemination of images that portray a victim's intimate parts or the victim engaged in sexual activities. The defendant should have known that the victim intended that image to remain private when there is no lawful public purpose for the dissemination. Can you briefly address the issue about privacy, the larger idea of privacy? My understanding of the facts here is that Elizabeth shared pictures of herself, and I'm forgetting his name, to the man. And then that information got shared with the defendant here. When Elizabeth shared those pictures, do those pictures continue to be private? Yes, Your Honor. Let me first be clear that we don't actually know the facts of this case. The posture of this case is that it was brought in a pretrial motion to declare the statute unconstitutional. There's been no trial. There's been no evidentiary hearing. What we have is the version of facts that the defendant has alleged. And so we don't know what would be shown in a trial to be the actual facts of this case. But taking the sort of broader question of whether when a victim of this crime engages in private speech by sharing this kind of communication with one person, they still have an expectation of privacy in that speech, that the recipient won't invade their right to privacy and publish it. And indeed they do. The U.S. Supreme Court has recognized that publicizing the contents of a private communication can be even a greater invasion of the right to privacy than the nonessential interception of a private conversation. So absolutely, the right to privacy in private communications exists. And when a defendant invades that right to privacy, violates that right to privacy by taking a communication that they should have known was intended to remain private and disseminating it to the public, they are invading the victim's right to privacy. Obviously these are importantly big questions here. But so is sharing photos through some digital way, whether it's e-mail, whatever it is, does that change the discussion about what is a private conversation that is protected? To be clear, Your Honor, I'm understanding your question is asking about the communication between the victim and the defendant, if that takes place. No, I'm not. The victim and the gentleman. I'm sorry, excuse me. I was thinking in a sort of more typical sort of setting of the case. Typically, no, Your Honor, the communication, whether it's via text or e-mail, is advanced in terms of technology of communication from one person to another, in no way makes a conversation less private than if it's two people talking in a closet. It's still a conversation where the recipient of the communication should know that it was intended to remain private. Now it's possible that the facts of this case will prove out slightly differently. Should, for example, the defendant, and I am not saying that this is what the facts will show, but should the defendant be able to show that the victim knew when she communicated with her intimate partner that she was also sending these pictures to the defendant, that perhaps arguably the defendant wouldn't be in a position where she should have known that it was intended that the image remain private. The fact that at trial the facts established might show that the defendant wasn't guilty of the crime doesn't mean that the statute is fictionally unconstitutional. If anything, it's further evidence that the statute is narrowly tailored to help government interests. Do you agree that it's a strict scrutiny, or is that what you're urging? I'm sorry. Are you urging a strict scrutiny analysis here? Well, if the court doesn't find that the speech that's prescribed by this statute is not protected by the First Amendment, then yes, a strict scrutiny would apply. And the analysis would be, is the statute narrowly tailored to the compelling government interest? I think the evidence of the compelling government interest is extensive. The government has an interest in protecting victims from the harm that can be caused, and usually is caused by this kind of communication. More than 90% of the victims of this crime report suffering significant emotional distress. More than 50% report conflict and suicide. More than 80% of the victims report significant impairment of their ability to function socially and professionally. Many of them lose their jobs and can't get new jobs. 50% report being stalked online as a result of the dissemination of their private sexual images. And fully more than a third of the victims of this crime report being stalked in the physical world as a result of the dissemination of private sexual images where they can be identified from them. So the government has a compelling interest in protecting the victims of this crime from these kinds of harms. The Supreme Court has also recognized protecting citizens' right to privacy in general as a compelling government interest. And indeed, in this case, there's also a societal interest. The vast majority of victims of this crime, the overwhelming majority, are women. If the state can't prescribe this kind of speech, then it sends a message to women that they're not entitled to the same right to privacy, the same sense of safety and security in themselves that the rest of society is. So the government has compelling interest at stake here. And as discussed, this statute is narrowly tailored. It only deals with images that show the victim's intimate parts when they're engaged in sexual acts, the kind of communication, to use the Supreme Court's words, a publication of which would offend the community's sense of decency or shock the community's sense of decency. It only deals with images where the victim can be identified. It only deals with images where the defendant should have known they were intended to remain private. And it has an exception for other lawful purposes. We've known for more than 50 years that publication of private information when it's of legitimate public interest is a lawful public purpose. So the General Assembly, when it says that publication for other lawful purposes is exempted from the statute, has carved out this area of speech that the Supreme Court has said cannot be prescribed. And it has narrowly tailored the statute to its interests. Mr. Fisher, you brought up the exemptions. Are they really affirmative defenses? Yes, I would say that they are, Your Honor, but I don't think that that makes the statute, that that renders the statute not narrowly tailored to its purposes. The publication of these kinds of private, of this kind of private information, which is limited to these private sexual images, is of the sort that would offend a reasonable person, that would shock the society's community's sense of decency. And saying that if it was done for a lawful public purpose because there was some sort of legitimate public interest in this shockingly intimate information in an individual case is not too broad a way of approaching the problem. The defendant and the lower court also suggested some other ways that they say the statute could be more narrowly tailored, but each of their proposed narrowings would actually exclude from prescription under the statute much of the speech that the state has an interest in preventing. For example, they talk about requiring that the defendant be a current or former intimate partner, or having an intense to harm element. But that's where this colloquial term for bench form doesn't disservice. Some of the scholars in this area refer to it as image-based sexual abuse. That's a better term because that's what we're talking about here. It's a form of abuse, and it doesn't matter whether the defendant was a current or former intimate partner, a friend, a co-worker, a complete stranger. It doesn't matter whether their intent was to cause harm or to get rich or to gain notoriety or just to entertain their friends. The harm that's done to the victim by this abuse is the same. Isn't that one of the questions about the statute? It does not have a mental state. There is some concern, I think, by the trial court that negligent sharing of this information would be criminalized. It's not true that it doesn't have a mental state, or even that the only mental area is negligence. It doesn't have a specific intent to harm element, but it requires the intentional dissemination of the images, and then it adopts a negligent standard, a reasonable standard, for one element, whether the defendant knew or should have known that the victim intended for the image to remain private. It's discussed as sort of two elements in the statute, a separate one that a reasonable person would know that they had not consented to its dissemination. That's the only place where negligence comes into play. And, again, a heightened mens rea would undermine the government's ability to enforce its compelling interests here. Mr. Fisher, what about the defendant's motive? I mean, there could be coercion, it could be keeping sex trafficking, and the victim's still not complaining to some other person. Isn't that relevant? I don't think the defendant's motive is relevant to whether – I mean, the defendant's motive is certainly not relevant to whether they've committed a crime under the statute. I don't think that it would be appropriate to require some sort of motive element or intent to harm element in this statute, because, as I said, the harm to the victim takes place, whether it was someone engaged in sex trafficking trying to control their victim, or whether it was an ex-intimate partner trying to punish someone who left them, or whether it was a college student sharing a private Facebook page with his friends for their entertainment. It doesn't matter. All of those motives result in the same harm to the victim. So having some sort of motive element or intent to harm element would narrow the statute to the point where it would no longer allow the state to prescribe the kind of speech that it is seeking to prescribe here in order to advance its compelling interests in this case. Your Honor, if I could just return quickly to the question about the mens rea for this element of knowing or should have known that it was intended to remain private. Even a recklessness mens rea would prevent the state from prescribing much of the speech that it needs to prescribe for its interests here. If you consider the biases that could be inherent in this kind of act, someone receives a private communication of this sort and unreasonably determines, well, if this person is willing to communicate with me in this way, then they must not hear if I then violate their right to privacy and share it with the public, especially where technology has made it possible with one click of a button to carelessly or faultlessly destroy someone's life, put their life at risk, requiring any kind of heightened mens rea for that element, especially if the statute does require any intentional dissemination, would take away from the state the ability to prescribe much of the kind of speech that it needs to prescribe here. Does the statute require dissemination for more than one person? I don't believe so, Your Honor, and I don't think that that is a problem because in the modern technological world, dissemination to one person becomes downstream dissemination to all people. The lower court and defendant point out that that's one way in which this is different than some of the tort actions that have come before it. The argument that the state is making does not depend on the elements of the crime being identical to tort actions that have existed before. The point is that the kind of speech that it's prescribing is part of the tradition of prescribing in American law, of allowing the prescription of the publication of truly private information and a novel description that, while striking a much narrower subset of that kind of communication, perhaps allows for prosecution with narrower dissemination than the tort allows for a cause of action on, wouldn't mean that the statute was suddenly, therefore, outside of this tradition of allowing prescription on the publication of private information. I will say, however, Your Honor, that if it is necessary in order to uphold the statute of constitutionality to incorporate dissemination equivalent to the publicity element of the public disclosure tort, that it would certainly be reasonable to do so. Those words have overlapping definitions in the dictionary. Publish is actually defined as to disseminate in the dictionary. So it would certainly be reasonable to interpret it as that element being coextensive with the tort element. And this Court has said that where possible to reasonably interpret a statute to uphold its constitutionality, it will do so. So if the Court disagrees with my analysis that this is just a continuation of that tradition of prescribing this kind of speech and, therefore, it's not protected by the First Amendment and sees it as being necessary to make the dissemination element and the publicity elements coextensive, then it would be a reasonable way to interpret the statute. And the Court should do so in order to maintain its constitutionality. So either because the Court recognizes that the speech, the limited amount of speech that is prescribed by the statute, falls outside the protections of the First Amendment, or because the Court recognizes that the statute is narrowly tailored to compelling government interests, people ask that this Court uphold the crime of nonconsensual dissemination of private sexual images and reverse the judgment of Henry County Circuit Court. Thank you. Mr. Bullish? Thank you. On behalf of Bethany Austin, the State's biggest argument today is that these images are truly private images. A gift unconditionally given to somebody can never be truly private, especially if the gift is legal in and of itself. This is distinguished in child pornography where the picture in itself is illegal, given to somebody makes the dissemination illegal. This is something that you have that's legal, and you give it to somebody without any expectations, any conditions on that, that's not truly private. No matter how much you want to think of it as private subjectively, objectively that's not private. It's to distinguish where somebody goes into your room and steals your native pictures. Then maybe this law can apply, and we can call it a truly private theft. So if you have a nude image, and, oh, I go in there, I steal that image,  then you're talking about truly private images. But these images unconditionally given to somebody are not private. Furthermore, the State is stating that the nude images are never of a legitimate public concern. Well, the courts have time and time declined to make such a broad categorical rule on what is a public concern and what is used for it, especially if they state that social media is more important to people than actual powerhouse media. And to make such a broad rule in this court or the Supreme Court would put a limit on what you can do with social media. Nevertheless, if this court does find that these are truly private images, there's still a fight that the State has to battle with, and it's this overgrowth. And one doesn't have to go too far in reading this law to just read the definition of the image. It says depiction or portrayal. So even if you see the image and go to another person and speak about this image, well, this is a naked photo that shows this and that on this photo, and this is the name behind the photo. I don't even have to show you the photo to be charged under this law. Furthermore, it does not define disseminate. So as soon as you get this image on your phone, you better considerate your phone because you already disseminated this photo. It doesn't care to whom you disseminate. It could be from an application to the application. It doesn't care for what purpose you disseminated, where you put it. So as soon as this photo reaches your computer, it is being disseminated and you are not in compliance with the statute. Are you saying receipt of the image is dissemination? So, Your Honor, on the phone, how this technology works today is that once you have it on your phone and then you download, let's say, a Skype application, it asks if you allow the Skype. What kind of application? Skype or any sort of social media. It asks you do you want to allow this application to access your images, phone numbers, and such things. So you technically disseminated that. Or even... Is this going out into another world by downloading it? It needs. So you just don't know where this is going to end up. The statute doesn't care if it goes to one folder. So let's say you purposely create a folder that you want to save this image to. If you download this image and you transfer it to another folder, now you made copies of this image and you put it in a folder and you are not in compliance with this law. With disseminate, again, it doesn't matter to whom you disseminate, where you disseminate it, how you disseminate it. It just asks for consent to disseminate. So long as a reasonable person would think that they did not consent to dissemination. Which leaves me that there are not one negligent element to the statute, but two negligent elements to the statute. Whether a reasonable person would consent to dissemination or whether a person knew or should have known that the person on the image did not consent to dissemination. There are two negligent elements. And I believe Alvarez and Malengo case are good cases and analogies for the eavesdropping cases where they say that, well, if a broad area of innocent conduct is being criminalized, then it's too broad to survive under the speech against the First Amendment and freedom of speech. I'm going to give one example of where this innocent can come in. An example of a photographer who goes into your private room, you want your picture taken of you nude or whatever, and then you want those pictures developed later and not sent to you. So if this photographer, by mistake, emails those pictures or mails those pictures to a wrong person, that photographer can get charged under the statute. He has intentionally disseminated it to another person. A reasonable person would think of these as private. And he knew or should have known to think about this address where he's going to send it. So that photographer will certainly get charged under this crime. And time and time, the United States Supreme Court did not care whether the state promises to use this statute sparingly or with discretion not to charge this photographer. The point is that this photographer can get charged under the statute. So if they are truly private facts, which my client believes they are not truly private facts, this statute has to survive overrun. If they're not, in fact, truly private facts, then this is a content-based regulation. It regulates how a person can use his speech based on the content of the image. And so the state has the burden of proving that they have a compelling government interest that is narrowly tailored, uses least restrictive means, which, in this case, there is no compelling government interest. First, they're not truly private. Second, they have done some research that they want to call quantitative research or qualitative research, as they have done in the case of Playboy and as they have done in cases of the animal cruelty. In Playboy, they did quantitative research to see how many people are affected by this accidental broadcasting of pornography. And they missed the point. Here, too, in their research that they have done with the initial Civil Rights Initiative group, I believe, they attempted to quantify this. But they started this survey by asking the questions, what does America think about sharing nude images online? And that's how you ask somebody to do a survey. Now you're appealing to that person who actually has done it or who has had their image shared. Now you're appealing to that person to answer the survey. You're not bringing somebody to do the survey and just asking the questions for whatever the reason the survey is posed.  And draw a person who may have had this done to them to answer the survey. How does this discussion fit into our analysis? I was kind of troubled by that in the briefs. Your opponent cited the survey. You're suggesting there's flaws in the survey. How does a reviewing court make that decision about how to rely on that? On behalf of my client, I was relying on the United States court decisions in the Playboy where they had asked the lower courts to do a quantitative or qualitative research on this. And they have found certain flaws in that research, and they could not quantify their compelling interest. Here I'm arguing they could not quantify nor qualify their compelling interest by finding the flaws in this survey. That is their only scientific research they have done to find a compelling interest in this. So there must be compelling scientific evidence to support a compelling governmental interest? They have to have some kind of research done to support their compelling interest. They can't just say, well, this is a compelling interest in protecting these new images of nations where there's no people that are affected by that, or there's very little of the population affected by this, at least when it comes to the First Amendment. And the same with qualifying it. They tried to do certain psychological research in this survey, but in that research they say that, well, there's a higher psychological impact on persons who had their photographs shared versus the persons who never had their photographs shared. Well, they never did any research on are these psychological problems preexisting, or did they continue to exist? Did it worsen after the dissemination? They don't do that. They just say, well, there's a little bit more of a psychological impact than that. So there is no compelling government interest to protect this. First, these are not truly private. Second, there's no quantifying or qualifying research done in this case. Even if there is a compelling government interest, they have to survive the narrowly tailored and least restrictive means in this case. As I already said, I won't repeat it. I won't repeat the entire argument, but the definitions are not well defined. There are two negligent elements. The state fails to cite to you what Vermont has used as their statute, what the Wisconsin, they mention Wisconsin courts in upholding their statute, or Vermont upholding their statute. And they fail to state to you what those statutes actually say. In Vermont, there is, with intent to commit harassment and coercion and things like that, there is the intent element in there. So they care for what purpose you disseminate this. Same with Wisconsin. I don't believe there are classical felonies where you can go to prison for three years. There are misdemeanors. In Vermont, misdemeanor is three years. And it does not use the least restrictive means. Again, I believe those two elements are a little bit commingled, but they do cite the tort of disclosure of private fact, which in and of itself doesn't contain any negligent elements. And those elements in the disclosure of private facts, they have to be untruthful. So if you disclose something that's truthful, you cannot be liable under the tort of disclosure of private fact. In conclusion, I ask, is there any further questions? In conclusion, I ask that this honorable court affirms the trial's court's decision. Thank you. Reply. Thank you, Your Honors. The defendant argues that the private sexual images that are at issue in this crime are not private facts anymore once they've been freely given from one person to another. I call this court's attention to language from the U.S. Supreme Court in its decision in Bar-Mickey, where it said that, quote, the disclosure of the contents of a private conversation can be an even greater intrusion on privacy than the interception itself. It is not the case that one's right to privacy dissipates as soon as they communicate to one other person.  Then it essentially eradicates the right to engage in private conversation at all. So it's limited to one person communicating to another person. So, for example, one person communicating to another person on social media, would that be a different analysis? I suppose it would depend on the nature of the social media. But if someone were to, say, post a tweet on their general timeline adding one other person, but it's something that the public could see, then no, that's not a private communication. If someone were to use the direct messaging function that no one except for the intended recipient can see, then that is a private communication. But this goes to the element of whether a reasonable person would know that it's intended to remain private. I think that's the kind of factual question that I don't think we ask the triers of that to resolve in numerous settings. So I don't think that that, in some way, would render the statute overbroad. Say there are two people who have gone out on a date, and one sends the other one an unsolicited picture of themselves in the nude or whatever, and the person that receives it gets a text message, for example. They get it and they go to their friend and say, look what this person sent me, and show them the picture. Have they committed a felony? I believe so, Your Honor. I think they've disseminated it at that point, assuming, of course, that one would find that they knew or should have known that it was intended to remain a private communication between the two of them. So even if you get it unsolicited and you really don't appreciate it, if you show it to somebody else, you've committed the felony. Right. Again, Your Honor, I think you have to respect the person who communicated with you privately, their right to privacy, and this very intimate private fact that they communicated to you. Now, again, if that definition of dissemination were to be the issue that would, in this Court's judgment, make the statute not narrowly tailored, then it would certainly be reasonable to interpret dissemination as requiring more. It's defined in the dictionary as to spread abroad. It's essentially coextensive with publicity or publishing, and so the Court could reasonably interpret it as requiring an actual transmission of a copy or publication of the physical image itself as opposed to just showing it to someone or require that it be disseminated to the public at large or to a group of people who have a specific relationship with the victim as opposed to a single person or just showing it to them. That would be a reasonable way to interpret it, which is essentially coextensive with the publicity element of the public disclosure, which, just to clarify one thing, does apply to truthful public disclosure, truthful private information, to distinguish it from sort of false light privacy courts. They're two different courts. Both have been recognized on health by both courts in this State. There are some exceptions to the statute, but to follow through with this, young people are going to go out, one person sends a picture to the other, that person is shocked by receiving this, wants some distance from that person, maybe goes to a teacher or a friend or a parent and said, What should I do about this? I'm worried about why this person sent me this picture. That person's committed this crime. Not necessarily, Your Honor, under the hypothetical that you just presented. I do think that it's important that the burden not be placed on the victim who chooses to engage in a type of private communication as opposed to on the defendant who chooses to carelessly infringe on their right to privacy. But if there is a lawful public purpose for the dissemination, then it is exempted. And also, again, it's important to remember, this statute applies to victims and defendants that are over the age of 18 or victims who are over the age of 18. We're not talking about kids. But the U.S. Supreme Court in Snyder, for example, has given us some guidance as to what it means for information to be of legitimate public concern, at which point there would be a lawful public purpose for its dissemination. And general political interest, social interest, newsworthiness, these are all examples of issues that are of legitimate public concern. So if there was, for example, some reason why the recipient was concerned about having received it, then the dissemination might... And again, there are also specific exemptions for reporting unlawful behavior and so on and so forth. So, for example, an 18-year-old soccer player who receives an inappropriate image from an adult coach sharing it with a parent would certainly not have committed a crime here because the kind of behavior that they were concerned about, that they were disseminating this image for, is the kind of thing that is of general social concern right now. And so they would be exempted from the statute. But... Who's the victim? You're talking about the victim. In this scenario we're talking about, who's the victim? The victim is the person whose private sexual image that they engage in private communication with another person has been disseminated to the public. Again, you know, this... I think there's a temptation to think of it as the victim having done something careless or ill-advised in sharing a private sexual image. But they have a right to engage in that kind of private communication with someone. And if it is done in a way that the person receiving it should know that it was intended to be a private communication, then they are the one who is then invading that person's right to privacy, putting that person's life at risk, often destroying that person's life by taking that private communication and disseminating it. We certainly are not arguing that private sexual images are never a public concern. I think it's easy to come up with hypotheticals where they are. And this statute exempts those. The defendant mentioned the definition of the word image, arguing that it was overbroad. I think that the dissemination of a private drawing or cartoon or painting, if indeed one of those were created in a way that there was an expectation of privacy in it, and the victim could be identified, could indeed go to legitimate government interests at stake here. But overbreadth requires a substantial amount of inappropriate breadth beyond the legitimacy of the statute. And I don't think that there is a substantial amount of this crime being prosecuted against human-to-human portraiture as compared to the sharing of actual private sexual images. If I could quickly, Your Honors, talk about the level of information necessary to establish the compelling government interests in this case. This is not like Playboy or the California Video Game Ban. This is not a hypothetical harm, a diffuse harm to society. We don't know who's affected by it. There have been surveys. I think the amicus brief cites to a survey that identifies one in ten adults as having been the victim of this crime. We discussed earlier the evidence of how extensive the harm caused by this crime is. And certainly those studies were published in peer-reviewed publications. There's no reason to doubt the approach that those social scientists took in conducting those studies. And other states, while their statutes may be slightly different, are slightly different, have nevertheless recognized this compelling government interest that's at stake here. And the people that cite to Laurel Arsenault in our brief, but they are the Supreme Court, and certainly the people we have to file additional authority if the court were interested, but they are the courts that require any scientific evidence. Even common sense and history can be sufficient for the legislative body to determine that there's a compelling government interest. The evidence here goes far beyond that. So, again, unless your honors have any further questions. Thank you, Your Honor. Thank you. Case number 123910, People v. Austin, will be taken under advisement as agenda number four. Mr. Fischer, Mr. Gosar, thank you for your arguments this morning. You are excused.